## ISABEL GONZALEZ Y GONZALEZ ET AL., Plffs.,

*v.*

## JOSÉ IGNACIO ARSUAGA É ISAGUIRRE ET AL., Dfts.

---

San Juan, Equity, No. 822.

Account—Lease and Mortgage.

1. Where a piece of land is sold by the lessor to the lessee and the deed is later declared void, the original lease continues in force during its term, and the account between the parties is determined by the lease rental less interest on a mortgage held by the lessee against the lessor.

Lease—Extension.

2. Where a lease provided that the lessee could extend it for another term by giving notice before the expiration of the first term,

---

NOTE.—Upon the question of effect of holding over after expiration of lease, with option for extension or renewal, without formally exercising option, where notice is required by lease, see note in 29 L.R.A.(N.S.) 174.

Gonzalez y Gonzalez v. Arsuaga é Isaguirre.

and the lessor during the first term sold the land to the lessee by deed which was later declared void by the court after the expiration of the original term of the lease, there was no extension for the additional period, since no notice of such extension was given.

Real Property—Possession in Good Faith.

3. One who takes a deed from an attorney in fact, knowing that the latter has not authority to execute the deed, is not a possessor in good faith, but is a holder in bad faith.

Real Property—Possession in Bad Faith—Damages.

4. The damages for which a possessor in bad faith is liable are the produce which could under reasonable circumstances have been produced upon the land,—the reasonable rental value of the land.

Mortgages—Foreclosure—Pleadings.

5. The court will not order a foreclosure of mortgage in a suit for another purpose, the foreclosure not having been asked for in the pleadings.

Opinion filed August 5, 1916.

————

*Messrs. Joseph Anderson* and *O. M. Wood* for plaintiffs.

*Mr. F. H. Dexter* for defendants.

HAMILTON, Judge, delivered the following opinion:

This was a case tried before the court some time ago upon facts which led to a decree. The plaintiff had leased a certain piece of property of 188 acres to the defendant or people who were properly represented. The rental in question was $400 a year. There was between the same parties contemporaneously a mortgage with interest at the rate of $30 a month. The lease ran from June 2, 1907, for six years, and had in it an option to the lessee upon notice to extend the lease for another

Gonzalez y Gonzalez v. Arsuaga é Isaguirre.

six years, that is to say, a new lease would begin June 2, 1913, and would run until 1919. During the running of this lease, the attorney in fact of the plaintiffs made a deed to the defendants of the property, and that was what the main suit was about. The plaintiffs claimed that this deed was fraudulent, that the attorney in fact was not an attorney in fact, that he had no power to represent here, and that the defendant was chargeable with notice. The court sustained this contention and decreed that the deed should be set aside. That was done. The next question was, What about an adjustment of account between the parties? The decree had revested both parties in their state as they were before the deed, that is to say, that the defendant had leased the property on June 2, 1907, and the defendant was in under that lease.

1. In the first place, there is no doubt as to the standing of the parties during the original six years of the lease. The lease was for a certain fixed sum of money rental annually, and the property was subject to a mortgage, so that for that those years the accounting is a simple matter. It is simply taking the amount of the rental for six years at $400 a year and deducting from that the amount of the interest on the mortgage for the same length of time. The amount of interest was $360 a year for the six years.

2. But in the second place, the question for the time from June 2, 1913, until the date of this decree in 1916, something over three years, is a different matter. If the lease was renewed, the conditions would be the same and the calculation would be the same, but the lease in paragraph two, and some illustration is also found in paragraph six, says that the lease is subject to extension for six additional years at the will of the

lessee, provided, however, that they give six months' notice in
advance to the owner of their intention to continue said lease
for another six years, and thereby this contract shall be con-
sidered as renewed *de jure* and *de facto;* and I, the notary,
warn the parties that this circumstance will have to be duly
noted in the registry of property of the district.   This would
seem to show that in the view of the notary the extension was
to be noted in the registry of property, and this was not done,
and there is no evidence and no contention that there was any
such formal notice given.   If that stood alone, there would be
no doubt that the lease was not extended.   In point of fact, the
defendant seems to have relied upon his deed, which he had
gotten before the first six years expired.   Deeming himself the
absolute possessor of the property, of course he did not give
notice to the plaintiff or to anybody else in connection with the
lease.   From his point of view the lease had fallen into the
ownership because he was the owner.   The decree of the court,
however, determines that this was incorrect; that the deed was
void, and that the lease was in effect, and that because of the
fraudulent nature of the deed, of which the defendant had no-
tice, or had enough to put him upon notice.   That being so,
there was no extension of the lease, because no notice was given,
as required by the lease.

3. In the next place, what is the result of that situation?
The defendant claims that he acted in good faith throughout;
and that the matter of bad faith does not apply.   Sec. 436
of the Civil Code of Porto Rico says: "A bona fide possessor
is deemed to be the person who is not aware that there exists
in his title or in the manner of acquiring it, any flaw invali-

Gonzalez y Gonzalez v. Arsuaga é Isaguirre.

dating the same. A possessor in bad faith is deemed to be any person possessing in any case contrary to the above."

That has been determined in the main case, and it has been decided that the defendant was infected with the bad faith of the deed, so that it cannot be said that the defendant was in the position spoken of in § 436 of the Civil Code, but comes under the definition of a holder in bad faith given in the next section. So it must be considered that the defendant was in possession in bad faith from June 2, 1913, down to the present time.

4. In the next place, it is to be determined what damages, if any, the defendant must make good to the plaintiff under these circumstances, for this period from June 2, 1913, the amount for the period before that having already been determined above. The following are the sections of the Civil Code which are applicable:

Sec. 457. "A possessor in bad faith shall pay for the fruits collected and for those which the lawful possessor might have collected, and shall only have the right to be reimbursed for the necessary expenses incurred in the preservation of the thing. Expenses incurred in improvements for luxury and pleasure shall not be refunded to the possessor in bad faith; but he may remove the objects for which such expenses have been incurred, provided the thing suffers no injury thereby, and the lawful possessor does not prefer to retain them and pay the value they may have at the time he enters into possession."

Sec. 468. "Any person who, according to law, recovers possession unlawfully lost, is considered to have held it uninterruptedly for all purposes which may redound to his benefit."

Sec. 1249. "In order to judge as to the intention of the

Gonzalez y Gonzalez v. Arsuaga é Isaguirre.

contracting parties, attention must principally be paid to their acts, contemporaneous and subsequent to the contract."

Sec. 1274. "Whenever a person, who is obliged by a declaration of nullity to return a thing, cannot return it because it has been lost, he must return the fruits collected and the value which the thing had when lost, with interest from the same date."

The testimony of the plaintiffs has construed this as meaning that everything which the most diligent manager of this tract of 188 acres could have produced is to be considered as produced, and the plaintiff to be reimbursed accordingly. This is too strict a construction of the section. There are a good many other things in the cane industry to be considered besides the profits. It seems to the court, and in fact it has been acted on in other cases, that this section must receive a reasonable construction, and that the produce spoken of must be considered to be the produce which could reasonably be expected under the circumstances from this tract of 188 acres. What would this be? It seems to have been shown that there were some 50 or 60 acres which could be, and to some extent were, cultivated in sugar cane, but there is possibly as much more swamp, and then other land that had at least several hundred cocoanut trees on it, and some land that is suitable for pasture. It is difficult to get at the exact value of this tract without knowing all the surroundings, but the defendant introduced a well-informed witness who has been in charge of the property, and he says that the average rental per acre of this land, taking good and bad altogether, is some $5 or $6. Multiplying the number of acres by this, we find that the reasonable revenue of this property ought to have been about a thousand dollars a

Gonzalez y Gonzalez v. Arsuaga é Isaguirre.

year. The court will adopt that figure, and a decree for this second period from June 2, 1913, to the present will be figured on the basis of a thousand dollars a year. An offset against this will be the interest of $400 a year that ought to be paid. The decree will be for the net amounts of the two periods as above indicated.

5. It has been suggested by the defendants that whatever amount is ascertained should be offset against the principal of the mortgage; in other words, that the mortgage should be considered as foreclosed, or should be foreclosed, and these profits deducted from the amount found. It is sufficient to say that the pleadings in this case do not call for a foreclosure of the mortgage. There is no cross bill seeking that result. The defendant has that remedy any time he chooses to exercise it, but the court cannot exercise it for him, so that the decree cannot go on that basis. The defendant will take that course whenever he sees proper, but in the meantime a decree will be entered for the net amount of the reasonable produce of the property less the interest, all as above stated.

It is so ordered.